1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AHP CAPITAL MANAGEMENT LLC,

               Plaintiff(s),

    v.

OAK HARBOR CAPITAL LLC, et al.,

               Defendant(s).

CASE NO. C25-0007-KKE

ORDER ON MOTIONS TO DISMISS

Plaintiff AHP Capital Management LLC ("AHP") filed a 128-page complaint against multiple defendants, bringing claims arising from a series of financial interactions between the parties and others, most of which are related to a contract.  Dkt. No. 1.[1]  Defendant Western Alliance Bank and another group of Defendants[2] filed motions to dismiss some or all of the claims against them.  Dkt. Nos. 74, 93. The Court finds that many of AHP's allegations are not plausible in light of the undisputed terms of a contract at the heart of this action, while other allegations (with few exceptions) lack the requisite level of particularity or fail to state a valid claim for relief. Accordingly, the motions to dismiss will be granted or granted in part, as explained at the conclusion of this order.

---

[1] This order refers to documents on the docket by CM/ECF page number.

[2] These other Defendants are Oak Harbor Capital, LLC; Atlantica, LLC; Magerick, LLC; William Weinstein; WWR Management, LLC; Land Home Financial Services, Inc.; and Bradley Waite (hereinafter "the Weinstein Defendants"). Although Mr. Waite's first name is spelled "Brandley" on the Court's docket, it appears that this is a scrivener's error. *See, e.g.*, Dkt. No. 26. AHP agreed to dismiss its claims against Defendant Banner Bank without prejudice in December 2024.  Dkt. No. 49.

1

## I.    BACKGROUND[3]

2    In October 2022, AHP[4] entered into a Mortgage Loan Sale Agreement With Repurchase

3    Obligation ("MLSARO") with Cymbidium Restoration Trust ("Cymbidium").  The MLSARO

4    addressed the transfer of two groups of mortgage loans from AHP to Cymbidium.  Dkt. No. 1 ¶¶

5    4, 54, 65.  According to the complaint, the "Category A" loans were sold outright to Cymbidium.

6    *Id*. ¶ 4.  By contrast, the complaint states that "certain rights" in the "Category B" loans were

7    transferred to Cymbidium as security for a $19.75 million loan to AHP (the "Cymbidium loan").

8    *Id*. ¶¶ 54–55.[5]  Under the terms of the MLSARO, Cymbidium was entitled to all monthly payments

9    and all other payments and recoveries of principal, interest, late payment charges, prepayment

10    charges, prepayment premiums and other fees, charges and amounts paid or recovered on the

11    "Category B" loans on and after September 30, 2022, until the Cymbidium loan was repaid in full.

12    Dkt. No. 1 ¶ 56; Dkt. No. 94 at 6, 8–9.

13    The MLSARO provided that after the loans were conveyed, those loans would be put up

14    for sale to be managed by Mission Capital, "with the proceeds of any sales being applied dollar

15    for dollar to the Repurchase Price for the benefit of [AHP]."  Dkt. No. 1 ¶ 59 (emphasis omitted);

16    *see also* Dkt. No. 94 at 8–9.  The MLSARO obligated AHP to repurchase whatever "Category B"

17    loans remained on January 7, 2023.  Dkt. No. 1 ¶¶ 60, 63.

18

19

20    ---

[3] This section is based on the complaint as well as documents referenced in the complaint, to the extent they are in the record, unless otherwise indicated.

21

[4] Plaintiff is the administrator of American Homeowner Preservation Trust Series 2015A+ and American Homeowner Preservation Trust Series AHP Servicing.  *See* Dkt. No. 1 at 1.  For simplicity, this order refers to Plaintiff and the AHP-related entities collectively as "AHP."

22

23    [5] The MLSARO itself does not appear to contemplate the sale of different rights with respect to the Category A loans and the Category B loans.  Instead, the contract terms differentiate between the two categories with respect to whether AHP was obligated to repurchase them in the future (*i.e.*, AHP was not obligated to repurchase the Category A loans).  *See* Dkt. No. 94 at 5, 7, 22–23.

24

AHP was unable to effectuate that repurchasing on January 7, 2023, and the parties executed the First Amendment to the MLSARO as a response. Dkt. No. 1 ¶ 64. Effective March 15, 2023, the amendment eliminated the distinction between the "Category A" and "Category B" loans, such that AHP was no longer obligated to repurchase any loans, and granted Cymbidium rights to an additional 277 mortgage loans owned by AHP. *Id*. ¶ 65. The amended MLSARO provides "that any revenue and proceeds from disposition, assignment, and servicing" of the loans subject to the contract (hereinafter "Mortgage Loans") would be credited toward AHP's repayment of the Cymbidium loan. *Id*. ¶ 66. Furthermore, according to the complaint, upon AHP's payment of the repurchase price,[6] the remaining Mortgage Loans and excess loan proceeds were to be returned to AHP unencumbered. *Id*. ¶ 67.

The amendment to the MLSARO also impacted the parties' loan servicing obligations. The original MLSARO requires that the servicing of the "Category A" loans was to transfer from AHP to Cymbidium as soon as practicable after October 7, 2022, while AHP was to continue servicing the "Category B" loans until February 3, 2023, and then transfer servicing to Cymbidium as soon as practicable thereafter. *See* Dkt. No. 94 at 8. The amendment states that "AHP Servicing and SN Servicing will remain the servicers of the Mortgage Loans through at least July 1, 2023." Dkt. No. 94 at 41.

On October 6, 2022 (the day before the loan conveyance date), Defendant Magerick, LLC (which is managed by Defendant Oak Harbor Capital, LLC ("Oak Harbor"), which also manages Cymbidium) pledged the Category B loans as collateral for an increase in its line of credit from Western Alliance to fund the Cymbidium loan to AHP. Dkt. No. 1 ¶¶ 32, 39, 70, 71. Although

---

[6] The complaint states that even after amendment, the MLSARO required Cymbidium to return the Mortgage Loans to AHP unencumbered upon AHP's payment of the "Repurchase Price" (Dkt. No. 1 ¶ 67), but the amendment itself indicates that AHP's "repurchase obligations … are hereby eliminated with respect to all Mortgage Loans in their entirety." Dkt. No. 94 at 40.

Western Alliance initially scrutinized and questioned the transfer of the Mortgage Loans to Magerick, it eventually accepted Weinstein's assurance that the transfers were proper. *Id*. ¶¶ 81–86. The complaint alleges that Western Alliance created "documentation designed to conceal [Magerick's] theft of the AHP [] Mortgage Loans." *Id*. ¶ 96.

The complaint also alleges that the Weinstein Defendants and affiliates abused limited powers of attorney ("LPOAs") that AHP executed to allow Oak Harbor to manage AHP's loans and real estate owned properties. Dkt. No. 1 ¶¶ 100–37. According to the complaint, the goal of Oak Harbor's management was to "help monetize the Mortgage Loans" and use the proceeds to pay down the Cymbidium loan. *Id*. ¶ 104. But the complaint alleges that instead, the Weinstein Defendants and their affiliates allegedly abused LPOAs (some of which were related to the MLSARO and some which were not (*id*. ¶¶ 118–25)) to transfer to Weinstein affiliates hundreds of Mortgage Loans for little to no consideration, to be pledged as collateral for loans financed by Western Alliance, and did not apply the proceeds toward paying down the Cymbidium loan to AHP as required by the amended MLSARO. *Id*. ¶¶ 117–25. AHP's manager revoked all powers of attorney previously granted to the Weinstein Defendants in October 2023, but Weinstein affiliates continued to rely on them to transfer Mortgage Loans to themselves, at the direction of Western Alliance.[7] *Id*. ¶¶ 126–33, 167.

AHP claims to have paid off the Cymbidium loan in October 2023, but Cymbidium has nonetheless refused to return the Mortgage Loans to AHP. *Id*. ¶¶ 140–41. AHP's manager, Jorge

---

[7] It appears to be the Weinstein Defendants' position that the LPOAs authorized Oak Harbor to effectuate the sale and servicing of the Mortgage Loans as contemplated by the MLSARO, and that after the Mortgage Loans were sold to Cymbidium via the MLSARO, Cymbidium could transfer or assign them by virtue of the rights conveyed in the MLSARO (not the LPOAs). *See* Reply, *Cymbidium Restoration Tr. v. Am. Homeowner Pres. Tr. Series AHP Servicing*, No. C24-0025-KKE (W.D. Wash. Apr. 26, 2024), Dkt. No. 49 at 9–10.

Newbery, requested an accounting to determine the amounts paid on the Cymbidium loan, but Cymbidium refused, and instead filed a lawsuit against AHP.[8]  *Id.* ¶¶ 142–43.

The complaint also alleges the existence of an "Insurance Scheme" that is discrete from the underlying disputes related to the amended MLSARO described in the complaint.  Dkt. No. 1 ¶¶ 360–99.  Pursuant to this alleged scheme, Weinstein, Land Home, Oak Harbor, and Magerick planned together in 2021 to begin billing homeowners (some of whose homes were subject to the Mortgage Loans) for non-existent homeowners' insurance.  *Id.* ¶ 360.  Specifically, Oak Harbor allegedly purchased commercial insurance policies for homes worth $150,000 or more, and planned to "self-insure" the properties worth less than $150,000, but all homeowners were charged for commercial insurance that not all of them received.  *Id.* ¶¶ 362, 368.  The complaint alleges that when one of the uninsured homes was damaged in a fire, AHP contacted Land Home about filing an insurance claim.  *Id.* ¶¶ 373, 377, 379.  Land Home did not respond for many months, and finally responded that this particular loan was under Oak Harbor's account and AHP should contact Oak Harbor.  *Id.* ¶¶ 386–94.  Also, a different homeowner contacted Land Home to request proof of insurance, and the report received from Land Home listed a $95 insurance premium.  *Id.* ¶ 385.  AHP alleges that in reality this "insurance" was non-existent, and that neither the homeowners nor AHP had any "contractual rights against any insurance company for the premiums that were charged."  *Id.* ¶ 399.  From these facts, AHP alleges that Defendants were charging homeowners and AHP for insurance that did not exist.  *Id.* ¶ 397.

AHP filed this action in the United States District Court for the Central District of California in September 2024, and the case was transferred to this district (as related to the *Cymbidium* action) in January 2025.  Dkt. Nos. 1, 59.  Western Alliance filed a motion to dismiss

---

[8] *Cymbidium Restoration Tr. v. Am. Homeowner Pres. Tr. Series AHP Servicing*, No. C24-0025-KKE (W.D. Wash. 2024) (hereinafter "the *Cymbidium* action").

all claims against it (Dkt. No. 74), and the Weinstein Defendants subsequently filed a motion to dismiss certain claims against them (Dkt. No. 93). After considering the parties' briefing and hearing the oral argument of counsel, the Court now resolves the pending motions to dismiss.

## II.    ANALYSIS

### A.    Legal Standards

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court examines the complaint to determine whether, if the facts alleged are true, plaintiff has stated "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if plaintiff has pleaded "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" (*id*.), nor do "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "If a motion to dismiss is granted, a court should normally grant leave to amend unless it determines that the pleading could not possibly be cured by allegations of other facts." *Chinatown Neighborhood Ass'n v. Harris*, 33 F. Supp. 3d 1085, 1093 (N.D. Cal. 2014).

A heightened pleading standard under Federal Rule of Civil Procedure 9(b) applies to allegations of fraudulent conduct when fraud is an essential element of the claim or the claim is "grounded in" fraudulent conduct. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003). Under Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The fraud allegations "must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they

have done anything wrong." *In re Finjan Holdings, Inc.*, 58 F.4th 1048, 1057 (9th Cir. 2023) (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)).  To meet this standard, a plaintiff's "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess*, 317 F.3d at 1106 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).  The allegation "must set forth what is false or misleading about a statement, and why it is false." *Id.* (quoting *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994)).

**B.    The Sale or Transfer of the Mortgage Loans Is Contemplated in the MLSARO and the Complaint's Allegations to the Contrary Are Not Plausible.**

Several of the claims listed in the complaint allege that Defendants "stole" or otherwise fraudulently transferred Mortgage Loans away from AHP, or fraudulently represented that they owned or had the right to pledge the Mortgage Loans.[9]  *See, e.g.*, Dkt. No. 1 ¶¶ 401–06 (claim for violation of California Penal Code § 496(a)); 434(a)–(c), 468, 490(a), 494(a), 501 (claim for violation of 18 U.S.C. § 1962(c)); 527(a) (claim for violation of 18 U.S.C. § 1962(d)); 538 (claim for violation of 18 U.S.C. § 1962(a)); 551 (claim for violation of 18 U.S.C. § 1962(d)); 564–67 (claim for violation of 18 U.S.C. § 1962(b)); 571–76 (claim for violation of 18 U.S.C. § 1962(d)); 630 (claim for violation of California Business and Professions Code § 17200).

---

[9] At oral argument, AHP also advanced a theory that the amended MLSARO is unenforceable as a sham or because AHP was fraudulently induced to execute it. Dkt. No. 104 at 70–71. That theory is not reflected in the complaint: the Court reads the complaint to assume that the amended MLSARO is a valid agreement and to allege that Defendants acted contrary to its provisions in effecting fraudulent schemes. The factual timeline of the complaint begins with the execution of the MLSARO, without alleging much, if anything, about the prior relationship of the parties, the reasons why AHP entered the contract, or how it was negotiated. Dkt. No. 1 ¶ 54. AHP's counsel emphasized at oral argument that the RICO claims are not for breach of contract (Dkt. No. 104 at 71), but the claims are nonetheless related to the terms of the amended MLSARO, particularly because the complaint starts from the execution of that agreement. The Court has endeavored to understand what AHP interprets the amended MLSARO to mean, but the complaint's description is convoluted and incomplete, and the relationship between it and other documents such as the LPOAs and the bailee letters is not clear from the face of the complaint. Accordingly, to the extent AHP's claims are based upon the alleged unenforceability of the MLSARO, any amended complaint must clearly state the factual basis for this theory.

The Court has reviewed the amended MLSARO[10] and finds that its terms are inconsistent with an allegation that the Mortgage Loans were stolen. The amended MLSARO states repeatedly that it effectuates a sale and transfer of the Mortgage Loans from AHP to Cymbidium:

> On the Conveyance Date, upon the payment of the Purchase Price and delivery of the documents described herein, [AHP] shall sell, transfer, assign, set over, and convey to [Cymbidium], subject to the representations, warranties, terms and provisions of this Agreement, all the right, title, and interest of [AHP] in and to the Mortgage Loans, servicing released.
>
> …
>
> The transfer, assignment and delivery of the related Mortgage Loans in accordance with terms and conditions of this Agreement shall vest in [Cymbidium] all rights as owner of such Mortgage Loans free and clear of any and all claims, charges, defenses, offsets and encumbrances of any kind or nature whatsoever, including, but not limited to, those of [AHP.]
>
> …
>
> It is the intention of the parties that [Cymbidium] is purchasing, and [AHP] is selling, the Mortgage Loans and not a debt instrument of [AHP] or another security. Accordingly, the parties hereto each intend to treat the transaction for Federal income tax purposes as a sale by [AHP], and a purchase by [Cymbidium], of the Mortgage Loans.

Dkt. No. 94 at 8, 11, 17. Other language in the MLSARO and its amendment referencing transfer of the Mortgage Loans "back" to AHP at a future time indicates the parties' intent that the Mortgage Loans will first be transferred away from AHP. *See id*. at 13 ("[Cymbidium] may for any reason put any Mortgage Loan conveyed hereunder back to [AHP] and [AHP] will promptly repurchase such Mortgage Loan by immediately paying [Cymbidium] the Repurchase Price associated with such Mortgage Loan."), 41 (providing that upon payment of certain amounts, the "remaining Mortgage Loans … are to be assigned and transferred back to [AHP]").

---

[10] The parties agreed at oral argument that the Court should consider the amended MLSARO in resolving the motions to dismiss under the incorporation by reference doctrine. *See* Dkt. No. 104 at 11, 31–34. This doctrine allows a court to look beyond the face of the complaint to determine the sufficiency of the allegations in light of a document attached to a motion to dismiss, if (as here) that document is referenced in the complaint and central to plaintiff's claim, and no party disputes its authenticity. *United States v. Corinthian Colls.*, 655 F.3d 984, 999 (9th Cir. 2011).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Additionally, the amended MLSARO places no explicit restriction on Cymbidium's ability to transfer, assign, or pledge the Mortgage Loans, as AHP's counsel admitted at oral argument. *See* Dkt. No. 104 at 54–55. That Cymbidium transferred Mortgage Loans to Magerick, which pledged them as collateral for the loan that funded the amended MLSARO, is therefore not inconsistent with the amended MLSARO. Although AHP's counsel attempted to characterize such a restriction as an *implied* assumption of the amended MLSARO (*id.*), Washington[11] law requires that the explicit terms of the agreement control. *See Hearst Comm'cns, Inc. v. Seattle Times Co.*, 115 P.3d 262, 267 (Wash. 2005) ("[W]hen interpreting contracts, the subjective intent of the parties is generally irrelevant if the intent can be determined from the actual words used[,]" and courts "generally give words in a contract their ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent."). AHP may (and does) disagree with Defendants as to the meaning of the amended MLSARO, but that disagreement does not necessarily imply that the amended MLSARO is ambiguous nor does it prevent the Court from finding that AHP's allegations are not plausible when viewed in conjunction with the contractual terms. *See Int'l Union of Bricklayers & Allied Craftsman Local Union No. 20, AFL-CIO v. Martin Jaska, Inc.*, 752 F.2d 1401, 1406 (9th Cir. 1985) (explaining that a disagreement among the parties as to the meaning of a contract does not render the contract ambiguous).

At oral argument, AHP's counsel emphasized that the MLSARO states that the transactions contemplated therein are considered "sales by [AHP] to [Cymbidium] of the Mortgage Loans for all purposes other than accounting and tax purposes" (Dkt. No. 94 at 9), and AHP apparently interprets this section to mean that the contract is ambiguous as to whether the Mortgage Loans were sold. *See* Dkt. No. 104 at 72–73. Regardless of whether the transfer of the Mortgage Loans

---

[11] The MLSARO provides that its terms are to be interpreted under Washington law. Dkt. No. 94 at 17.

is treated as a sale or a loan, however, the amended MLSARO contemplates the transfer of the Mortgage Loans from AHP to Cymbidium, and thus AHP cannot plausibly allege that Cymbidium "stole" them from AHP when it appears that AHP contractually agreed to that transfer.

Thus, the Court concludes that where AHP alleges that Defendants stole the Mortgage Loans from them, or alleges that Defendants' conduct was fraudulent because the amended MLSARO contemplated that the Mortgage Loans would remain owned by AHP, these allegations are not plausible. Specifically, the Court dismisses AHP's claim for violation of California Penal Code § 496(a) as well as the portions of the Racketeer Influenced and Corrupt Organizations ("RICO") Act claims and the claim for violation of California Business and Professions Code § 17200 that are based on allegations that Defendants or affiliates of Defendants stole rather than purchased the Mortgage Loans from AHP.

**C.    The Complaint Fails to Allege RICO Claims Based on Other Acts with Particularity.**

The complaint lists multiple claims for violation of the RICO Act, 18 U.S.C. § 1962. Section 1962(a) prohibits any person from using money derived from a pattern of racketeering activity to invest in an enterprise, Section 1962(b) prohibits any person from gaining control of an enterprise through a pattern of racketeering activity, and Section 1962(c) prohibits any person from conducting an enterprise through a pattern of racketeering activity. 18 U.S.C. § 1962. Section 1962(d) prohibits a person from conspiring to violate Sections 1962(a)–(c). *Id.* Thus, an element of each of these claims is "racketeering activity," which is defined to include mail fraud, wire fraud, and bank fraud, among other conduct. *See* 18 U.S.C. § 1961(1).

To state a claim for violation of Section 1962(a), a plaintiff must plausibly allege that a person received money from a pattern of racketeering activity, invested those racketeering proceeds, and that plaintiff was "injured by 'the use or investment of racketeering income,' as opposed to the racketeering activity itself." *De Los Angeles Gomez v. Bank of Am., N.A.*, 642 F.

App'x 670, 675 (9th Cir. 2016) (quoting *Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co.*, 981 F.2d 429, 437 (9th Cir. 1992)). "[A plaintiff] must allege that the investment of racketeering income was the proximate cause of its injury. Reinvestment of proceeds from alleged racketeering activity back into the enterprise to continue its racketeering activity is insufficient to show proximate causation." *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1149 (9th Cir. 2008).

   To state a violation of Section 1962(b), a plaintiff must plausibly allege facts that explain how each defendant gained control of a RICO enterprise through racketeering activity, and how it "suffered a distinct injury" from each defendant's purported control of the enterprise. *De Los Angeles Gomez*, 642 F. App'x at 675.

   "To state a civil claim for violations of [Section] 1962(c), a plaintiff must allege '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as "predicate acts") (5) causing injury to plaintiff's business or property.'" *United Energy Trading, LLC v. Pac. Gas & Elec. Co.*, 146 F. Supp. 3d 1122, 1138 (N.D. Cal. 2015) (quoting *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996)).

   And to state a claim for violation of Section 1962(d), the plaintiff must allege facts showing that the defendant "was aware of the essential nature and scope of the enterprise and intended to participate in it." *Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993) (quoting *United States v. Muskovsky*, 863 F.2d 1319, 1324 (7th Cir. 1988)).

   The complaint alleges that Defendants violated Section 1962(a) by using and investing proceeds gained from racketeering activity to affect interstate commerce, and that Western Alliance, as a banking and financial institution, also transferred those proceeds across interstate lines. Dkt. No. 1 ¶¶ 535–43. It alleges that Magerick, Weinstein, Oak Harbor, Atlantica, Land

Home, and Western Alliance violated Section 1962(b) by acting together to defraud and seize control of the AHP enterprise by

> stealing the Mortgage Loans, taking control of the servicing thereof, taking possession of and stealing the Mortgage Loan Proceeds and Mortgage Loan Files, claiming ownership of the Mortgage Loans and thereafter pledging those Mortgage Loans to Western Alliance[,] thereby taking complete control of the AHP Enterprise, which they still control.

Dkt. No. 1 ¶ 564. And the complaint alleges that Magerick, Oak Harbor, Atlantica, Land Home, Weinstein, and Western Alliance violated Section 1962(c) by stealing the Mortgage Loans from AHP, fraudulently abusing LPOAs to transfer ownership of the Mortgage Loans, fraudulently pledging Mortgage Loans they did not own, charging homeowners for non-existent insurance, and using the proceeds of the Mortgage Loans and the insurance premiums to obtain financing from Western Alliance and enrich themselves and their investors. *Id.* ¶ 434.

As explained above, the allegations that the Mortgage Loans were stolen from AHP and could not be pledged are inconsistent with the terms of the amended MLSARO, and therefore do not plausibly constitute racketeering activity. The complaint also lists other predicate acts, but does not describe them with particularity. For example, the complaint describes the need for verification and documentation to support the transfers of the Mortgage Loans before Western Alliance would accept them as collateral for lines of credit extended to the Weinstein Defendants, and alleges that the Weinstein Defendants eventually produced such documentation to Western Alliance's satisfaction. *See* Dkt. No. 1 ¶¶ 452–485. The complaint assumes that these documents must have been fraudulent and that Defendants knew they were fraudulent, but does not allege facts plausibly suggesting any of the statements or documents were false or why Western Alliance would have known they were fraudulent. *Id.*

The complaint also alleges that Western Alliance was aware of a dispute between AHP and the Weinstein Defendants as to the ownership of the Mortgage Loans during the relevant time

1    period (*e.g.*, Dkt. No. 1 ¶¶ 175–79), but it does not follow from this allegation that Western

2    Alliance knowingly participated in fraudulent conduct.  The complaint does not allege that any

3    other Defendant informed Western Alliance that their efforts to transfer loans covered by the

4    amended MLSARO were fraudulent; instead it alleges that Weinstein assured Western Alliance

5    that the transfers were *not* fraudulent.  *See id*. ¶¶ 168–82.  The Court is aware of no authority

6    requiring Western Alliance to resolve a dispute between Cymbidium and AHP that persists to this

7    day as to the parties' obligations and rights under the amended MLSARO (*e.g.*, the *Cymbidium*

8    action), before Western Alliance could take any action with respect to the Mortgage Loans.

9           To the extent that AHP's RICO claims are based on allegations of an "insurance fraud"

10   scheme, these allegations are not pleaded with the necessary Rule 9(b) particularity.  *See* Dkt. No.

11   1 ¶¶ 360–99.  The complaint alleges that in approximately 2021 Weinstein, Land Home, Oak

12   Harbor, and Magerick "devised a plan to bill homeowners for insurance that was never intended

13   to be procured." *Id*. ¶ 360.  The complaint goes on to allege that those Defendants, via Land Home,

14   billed homeowners and AHP for premiums for non-existent insurance.  *Id*. ¶¶ 364–68.  The

15   complaint does not allege facts to support the conclusion that the insurance does not exist,

16   however, it describes Defendants' efforts to document the existence of insurance and assumes that

17   those efforts were evidence of "serial misrepresentations" and "falsehoods." *Id*. ¶¶ 380–82.  It

18   also describes homeowners' calls to Land Home to obtain proof of insurance, but does not allege

19   that homeowners were eventually told that they did not have insurance.  Rather, the complaint

20   merely alleges that they inquired about their insurance.  *See id*. ¶¶ 385–94.  The complaint therefore

21   fails to allege facts supporting its conclusion that "[n]o insurance documents were drafted or

22   created" and that "[c]onsumers and the AHP Trusts had no contractual rights against any insurance

23   company in return for the premiums that were charged." *Id*. ¶¶ 398–99.

24

1   For all of these reasons, the Court finds that, as a threshold matter, AHP's RICO claims

2   fail to plausibly describe "racketeering activity" with particularity.  The complaint is both too long

3   and too short: its repetitive and unwieldy length obscures the Court's ability to untangle

4   implausible theories from plausible (or potentially plausible) theories,[12] and it is also missing some

5   of the necessary facts underpinning allegations of fraud and fails to account for all provisions of

6   the amended MLSARO.  Until the predicate acts are described plausibly and with particularity,

7   the Court need not address other potential deficiencies in the RICO claims discussed in the parties'

8   briefing, such as whether the predicate acts are part of a pattern with multiple victims, whether

9   those acts caused harm to any Defendant, or whether the pattern has open-ended continuity.

**D.    The Claims for Breach of Fiduciary Duty and Negligence Fail as to Land Home and Western Alliance.**

11          The complaint lists claims for breach of fiduciary duty and negligence against Oak Harbor,

12   Land Home, and Western Alliance (Dkt. No. 1 ¶¶ 408–28), which Land Home and Western

13   Alliance move to dismiss.  The complaint states that AHP granted LPOAs to Oak Harbor with

14   respect to the Mortgage Loans to allow Oak Harbor to act on behalf of Cymbidium in executing

15   the amended MLSARO.  *Id*. ¶ 409.  The complaint also states that Land Home, a "substantial

16   investor in Magerick," continues to service the Mortgage Loans "improperly and without

17   authorization" to do so.  *Id*. ¶ 9.  According to the complaint, Land Home is misappropriating the

18   Mortgage Loan proceeds to "Magerick, Western Alliance and others" although AHP has the right

19   to those proceeds.  *Id*.  The complaint further alleges that as a "custodian" of the Mortgage Loans,

---

[12] For example, the complaint alleges that Weinstein, Oak Harbor, Magerick, and Atlantica double-pledged Mortgage Loans as collateral to different banks without their knowledge, but also that they did not own the Mortgage Loans in the first place.  *See, e.g.*, Dkt. No. 1 ¶¶ 231–331, 446, 448, 459, 501.  The Weinstein Defendants did not address these allegations in their motion to dismiss; in their reply brief, they do not directly dispute that double-pledging collateral would be fraudulent, although they deny that it actually occurred and contend that even if it did, it did not result in harm.  *See* Dkt. No. 99 at 6–7 & n.9.  This theory is therefore potentially plausible to the extent it is not inconsistent with the amended MLSARO.

Western Alliance owed a fiduciary duty to AHP to act in AHP's best interest and not to take any action with respect to the Mortgage Loans without AHP's authorization. *Id*. ¶ 412.

As explained earlier in this order, the amended MLSARO provides for the transfer of the Mortgage Loans to Cymbidium, and also specifies that the Mortgage Loans will continue to be serviced by AHP Servicing and SN Services through at least July 1, 2023. *See* Dkt. No. 94 at 41–42. The Oak Harbor LPOA was recorded in October 2023 and states that it is "being issued in connection with [Oak Harbor's] responsibilities to manage mortgage loans [] and [Real Estate Owned] properties [] owned by [AHP]." Dkt. No. 100 at 5. The complaint states that Land Home (as the servicer of the Mortgage Loans) breached duties it owed to AHP to protect the value of the Mortgage Loans by failing to procure appropriate insurance for the properties secured by the Mortgage Loans, failing to remit the Mortgage Loan proceeds to AHP and failing to provide AHP with any information about those proceeds, and refusing to transfer servicing of the Mortgage Loans. Dkt. No. 1 ¶ 415.

The complaint does not clearly identify the source of the alleged duties that Land Home and Western Alliance owe to AHP. The Oak Harbor LPOA is between Oak Harbor and AHP (Dkt. No. 100 at 5–13), not Land Home and AHP or Western Alliance and AHP. Oak Harbor is not a loan servicer and the LPOA does not obligate *Oak Harbor* to service any Mortgage Loans on behalf of AHP: instead, the complaint alleges that Land Home fraudulently serviced the loans that had been assigned by Cymbidium to Magerick. *See* Dkt. No. 1 ¶¶ 411, 414–15, 417. Nor does the complaint identify a chain of fiduciary duty (or any other duty) linking Land Home or Western Alliance to AHP, such that those Defendants could have breached a duty owed to AHP.

In the absence of any facts alleging the existence of a fiduciary duty that Land Home or Western Alliance owed to AHP, AHP's claim for breach of fiduciary duty fails as to these Defendants. "In order to establish a claim for breach of fiduciary duty, a plaintiff must prove: '(1)

existence of a duty owed, (2) breach of that duty, (3) resulting injury, and (4) that the claimed breach proximately caused the injury.'" *Munoz v. Bean*, No. 72794-0-I, 2016 WL 885043, at *9 (Wash. Ct. App. Mar. 7, 2016) (quoting *Micro Enhancement Int'l, Inc. v. Coopers & Lybrand, LLP*, 40 P.3d 1206, 1217 (Wash. Ct. App. 2002)); *see also Apollo Cap. Fund, LLC v. Roth Cap. Partners, LLC*, 70 Cal. Rptr. 3d 199, 214 (Cal. Ct. App. 2007) (same elements).[13]

Similarly, liability for negligence requires the existence of a duty owed by defendant to plaintiff. *See Zorchenko v. City of Federal Way*, 549 P.3d 743, 746 (Wash. Ct. App. 2024) ("In a negligence action, a court must determine as a threshold matter, whether an actionable duty was owed to the plaintiff."); *Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 912 (S.D. Cal. 2020) ("The elements of a negligence claim under California law are duty, breach, causation, and injury."). Again, because the complaint does not state any facts suggesting that Land Home or Western Alliance owed to a duty to AHP, the complaint fails to state a claim for negligence against Land Home or Western Alliance.

AHP's attempt to characterize Land Home as Oak Harbor's sub-agent is unavailing. *See* Dkt. No. 96 at 22–23 (citing California Civil Code § 2349 (defining when an agent can delegate its powers)). The LPOAs do not indicate that Oak Harbor hired Land Home to service loans on AHP's behalf such that a sub-agency relationship was created.

To the extent that the thrust of these claims with respect to Western Alliance assumes that the Mortgage Loans were *not* transferred to Cymbidium and/or could not be transferred by Cymbidium under the amended MLSARO, the crux of these claims appears to be inconsistent with the terms of the amended MLSARO (as explained above). *See* Dkt. No. 1 ¶ 413. And if Western

---

[13] Because the elements of a claim for fiduciary duty or negligence are essentially the same under either Washington or California law, the Court need not determine which state's law applies to these claims at this time. *See* Dkt. No. 93 at 20 n.17.

Alliance served as *Cymbidium's* custodian of the Mortgage Loans, it is unclear why that custodial arrangement would obligate Western Alliance to perform any duty on behalf of AHP.[14]

For these reasons, the Court finds that the complaint fails to state a valid claim for either breach of fiduciary duty or negligence against Land Home or Western Alliance.

**E.     The Claim for Violation of the California Business and Professional Code Fails.**

The complaint's fifteenth claim alleges that Defendants' unlawful and fraudulent conduct violates the California Business and Professional Code § 17200.  Dkt. No. 1 ¶¶ 625–35.  The "unlawful and fraudulent conduct" identified in the complaint is Defendants' representation that they own the Mortgage Loans and have the right to pledge them as collateral.  *Id*. ¶ 628.

California's Business and Professional Code prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising[.]"  Cal. Bus. & Prof. Code § 17200.  For purposes of a Section 17200 claim, a "fraudulent" practice requires a showing that "members of the public are likely to be deceived" by the practice.  *Multimedia Patent Tr. v. Microsoft Corp.*, 525 F. Supp. 2d 1200, 1217 (S.D. Cal. 2007) (quoting *Express, LLC v. Fetish Grp., Inc.*, 464 F. Supp. 2d 965, 980 (C.D. Cal. 2006)).

Defendants contend that this claim is not legally cognizable because there are no allegations in the complaint indicating that any conduct relevant to this action occurred in California, which is required in order for the California Business and Professional Code to apply to Defendants.  *See* Dkt. No. 74 at 27–28, Dkt. No. 93 at 21–22.  "California has a presumption against extraterritoriality under which a state statute is considered inapplicable to 'occurrences outside the state, ... unless such intention is clearly expressed or reasonably to be inferred from the

---

[14] The complaint acknowledges that the amended MLSARO obligated AHP to not only deliver but also to release the files related to the Mortgage Loans to Western Alliance, but states that AHP did not provide any releases to Western Alliance as apparently promised.  Dkt. No. 1 ¶¶ 87–96.

language of the act or from its purpose, subject matter or history.'" *Dfinity USA Res. LLC v. Bravick*, No. 22-cv-03732-EJD, 2023 WL 2717252, at *4 (N.D. Cal. Mar. 29, 2023) (quoting *Sullivan v. Oracle Corp.*, 254 P.3d 237, 248 (Cal. 2011)). Section 17200 "do[es] not apply to claims of nonresidents of California injured by conduct occurring beyond California's borders." *Loving v. Princess Cruise Lines, Ltd.*, No. CV 08-2898-JFW (AJWx), 2009 WL 7236419, at *8 (C.D. Cal. Mar. 5, 2009).

In the absence of allegations related to California conduct, the complaint fails to state a valid claim for violation of Section 17200. Moreover, even if extraterritorial application was appropriate here, the claim nonetheless fails because the statements identified in the complaint as fraudulent or unlawful concern Defendants' representation that they own the Mortgage Loans and have the right to pledge them as collateral, or that they were charging premiums for non-existent insurance. These claims are not plausible to the extent they are inconsistent with the terms of the amended MLSARO, or to the extent that the facts underlying the allegedly fraudulent nature of the insurance scheme are currently unclear. *See* Dkt. No. 1 ¶¶ 628–31. Thus, AHP has failed to state a valid claim for violation of Section 17200.

**F.    The Claim for Violation of the Real Estate Settlement Procedures Act Fails.**

In the sixteenth and seventeenth claims, the complaint alleges that Land Home and WWR Management LLC ("WWR"), respectively, violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607. This section provides: "No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed." 12 U.S.C. § 2607(b).

The complaint states that Land Home charged and accepted fees not reasonably related to the servicing of the Mortgage Loans and retained Mortgage Loan proceeds that rightfully belonged

to AHP. Dkt. No. 1 ¶¶ 642–43. AHP contends that Land Home should have credited the Mortgage Loan proceeds against the Cymbidium loan, but instead received a payment for services it never performed. *Id.*

Similarly, AHP alleges that WWR (an affiliate of Oak Harbor and Magerick) agreed in a contract with Oak Harbor to perform certain real estate settlement services in connection with the Mortgage Loans. Dkt. No. 1 ¶¶ 648–49. The complaint alleges that WWR never performed any of those services, and yet received a $1,500 fee. *Id.* ¶ 650.

According to the Weinstein Defendants, the purpose of RESPA, and specifically Section 2607, "is to protect consumers by prohibiting kickbacks and the splitting of fees paid for settlement services." Dkt. No. 93 at 22. Noting that AHP is not a consumer, the Weinstein Defendants argue that AHP "lacks standing to assert any RESPA claims regarding the MLSA loans." *Id.* (citing *Freeman v. Quicken Loans, Inc.*, 566 U.S. 624, 637 (2012)). Moreover, because the complaint fails to allege that Land Home or WWR split a fee with any other entity, the Weinstein Defendants argue that the RESPA claims must fail. *Id.* at 22–24.

In its opposition brief, AHP argues that the fee paid to Land Home or WWR injured AHP because those entities profited from transactions that should have benefited AHP (via a credit against the Cymbidium loan), and it therefore has standing to complain that Land Home and WWR received a fee it should not have retained. Dkt. No. 96 at 23–25. And even if those entities did not split a fee with anyone else, AHP contends that their conduct nonetheless violates RESPA because they received a fee they did not earn.[15] *Id.*

---

[15] At oral argument, AHP acknowledged *Freeman*'s holding and contended that it had sufficiently alleged fee-splitting between the members of the alleged conspiracy, without citation to any particular section of the complaint. Dkt. No. 104 at 52–53. The Court's review of the complaint does not reveal allegations of fee-splitting among any party.

Assuming AHP has standing to bring a RESPA claim, RESPA does not provide a means to challenge unearned fees. *See Freeman*, 566 U.S. at 638 ("In order to establish a violation of § 2607(b), a plaintiff must demonstrate that a charge for settlement services was divided between two or more persons."). In the absence of an allegation of fee-splitting, the complaint fails to state a Section 2607 claim against either Land Home or WWR.

**G.    The Claim for "Money Had and Received" Fails as to WWR.**

The complaint alleges that multiple Defendants received and continue to receive Mortgage Loan proceeds that were and are intended for the use and benefit of AHP. Dkt. No. 1 ¶ 656.

To state a claim for money had and received under California law, a plaintiff must allege that "the defendant is indebted to the plaintiff in a certain sum for money had and received by the defendant for the use of the plaintiff." *Murphy v. Am. Gen. Life Ins. Co.*, 74 F. Supp. 3d 1267, 1280 (C.D. Cal. 2015) (quoting *Gutierrez v. Girardi*, 125 Cal. Rptr. 3d 210, 219 (Cal. Ct. App. 2011)).

The Weinstein Defendants argue that the complaint fails to allege facts showing that WWR had and received money that was rightfully AHP's, but they do not dispute the viability of this claim as to any other Defendant. Dkt. No. 93 at 24. The only WWR-related facts alleged in the complaint state that WWR was paid $1,500 for property services, but did not perform the services for which it was compensated and did not document its activities to justify its fee. *See* Dkt. No. 1 ¶¶ 648–52. These allegations do not suggest that WWR had and received money that was intended for AHP's use, such that it could support a "money had and received" claim.

AHP argues in opposition that because it alleged that WWR, among others, "received money and benefitted from and continue to receive money and benefit from the Mortgage Loan Proceeds that were and are intended for the use and benefit of [AHP]" (Dkt. No. 1 ¶ 656), it has

adequately pleaded a "money had and received" claim. Dkt. No. 96 at 25. WWR argues in reply that AHP's conclusory allegation is not sufficient. Dkt. No. 99 at 14.

The Court agrees with WWR. The complaint asserts generally that Defendants received and continue to receive money intended for the use and benefit of AHP, but does not allege any WWR-related facts to support that conclusion. Accordingly, this claim is insufficiently pleaded with respect to WWR.

## H.    AHP States a Valid Unjust Enrichment Claim Against Western Alliance.

The complaint's tenth claim is for unjust enrichment, alleging that when the Weinstein Defendants transferred the Mortgage Loans away from Cymbidium, Defendants (including Western Alliance) received a benefit for which AHP received no or below-market consideration. Dkt. No. 1 ¶¶ 579–86. Specifically, AHP alleges that a "benefit was conferred upon Western Alliance either by receipt of the Mortgage Loans and Mortgage Loan Files, the alleged security position Western Alliance claims in the loans, and receipt of the Mortgage Loan Proceeds for which the AHP Trusts received no or below market consideration." *Id.* ¶ 583.

"Unjust enrichment is the method of recovery for the value of the benefit retained absent any contractual relationship because notions of fairness and justice require it." *Young v. Young*, 191 P.3d 1258, 1262 (Wash. 2008). A claim based on unjust enrichment has three elements: "(1) the defendant receives a benefit, (2) the received benefit is at the plaintiff's expense, and (3) the circumstances make it unjust for the defendant to retain the benefit without payment." *Id.*

Western Alliance argues that AHP cannot rely on an unjust enrichment theory to bypass the explicit terms of the amended MLSARO, and the complaint's tenth claim therefore must fail. Dkt. No. 74 at 28. According to Western Alliance, because the terms of the amended MLSARO govern the ownership of the Mortgage Loans and determine which entity is entitled to the Mortgage Loan proceeds, any claim for ownership of the Mortgage Loans or Mortgage Loan

proceeds must be brought under an express contract, rather than an implied contract, theory. *Id.* (citing *Group14 Techs., Inc. v. Nexeon Ltd.*, No. C22-1354 TSZ, 2024 WL 4227762, at *6 (W.D. Wash. Sep. 18, 2024)).

But the amended MLSARO is a contract to which Western Alliance is not a party, and therefore AHP is not bypassing contractual remedies it may have against Western Alliance via a claim for unjust enrichment. To be sure, the terms of the amended MLSARO may control whether any enrichment on Western Alliance's part is "unjust," but Western Alliance has not shown that AHP is attempting to circumvent a contract claim via an unjust enrichment claim—at least with respect to Western Alliance. Accordingly, this claim can withstand Western Alliance's motion to dismiss.

## I.    The Fourteenth Cause of Action Is Not Duplicative.

The complaint's fourteenth claim states:

> The AHP Trusts contend that the Mortgage Loans have been stolen from them and they are entitled to the return of the same free and clear of any encumbrance. The Defendants contend that they are either the owner of the Mortgage Loans or they have some rights and or encumbrances therein.
> Defendants are currently acting and proceeding as if they own or have rights in the Mortgage Loans.
> The AHP Trusts are therefore entitled to a declaration pursuant to 28 U.S.C. § 2201(a) that they are the owner of the Mortgage Loans, without encumbrances and the Defendants have no legal or equitable interest in the Mortgage Loans or the Mortgage Loan Proceeds.

Dkt. No. 1 ¶¶ 622–24. Western Alliance argues that the complaint's fourteenth claim for declaratory and injunctive relief is not properly a cause of action but a remedy, and should be dismissed as duplicative as to remedies requested on other claims. Dkt. No. 74 at 28–29.

AHP's opposition denies that the declaratory relief is duplicative, but does not address the question of injunctive relief. Dkt. No. 88 at 23. Whether AHP even intends to request injunctive relief with respect to the fourteenth claim is unclear, given that the complaint later indicates that

as to the fourteenth claim, AHP seeks "a Declaration pursuant to 28 U.S.C. § 2201(a) [] that the AHP Trusts are the owners [of] the Mortgage Loans, without encumbrances, and the Defendants have no legal or equitable [sic] in the Mortgage Loans or the Mortgage Loan Proceeds." Dkt. No. 1 at 126. That section does not request injunctive relief. *Id.*

Some of the complaint's other claims, as discussed above, hinge on the same premise of the fourteenth claim: that Defendants' conduct is contrary to the amended MLSARO and that AHP has been deprived of a benefit it is entitled to under the amended MLSARO. And while the Court finds that an allegation of "theft" with respect to the Mortgage Loans is inconsistent with the amended MLSARO, the relative rights of the parties under that contract remain an open question. *See* the *Cymbidium* action. Moreover, other MLSARO-related claims seek damages, whereas this claim seeks a declaration of the relative rights of the parties as to the Mortgage Loans and Mortgage Loan proceeds. The relief requested in the fourteenth claim is not duplicative of other claims in this suit. *Cf. Segar v. Allstate Fire & Cas. Ins. Co.*, No. C21-1526JLR, 2022 WL 102035, at *8 (W.D. Wash. Jan. 11, 2022) (dismissing plaintiff's claim for declaratory judgment because it "merely duplicates his breach of contract or [Consumer Protection Act] claims because it requests the same kind of relief that may be sought in connection with those claims"). Assuming that the reference to injunctive relief in the fourteenth claim is merely surplusage, this claim requests a remedy that is not duplicated elsewhere in the complaint and Western Alliance has not shown that it should be dismissed.

### III.    CONCLUSION

For these reasons, the Court GRANTS the Weinstein Defendants' motion to dismiss (Dkt. No. 93) and GRANTS IN PART and DENIES IN PART Western Alliance's motion to dismiss (Dkt. No. 74). The following claims are dismissed with leave to amend:

(1) The "money had and received" claim against WWR

(2) The RESPA claims
(3) The California Business and Professional Code § 17200 claim
(4) The claims for breach of fiduciary duty and negligence against Land Home
(5) The RICO claims
(6) The California Penal Code § 496(a) claim
(7) Any other claims to the extent that they are based on a theory that Defendants stole the Mortgage Loans from Plaintiff.

Western Alliance's motion is DENIED with respect to the claims for unjust enrichment and declaratory relief.

Plaintiff may file an amended complaint no later than August 1, 2025.

Dated this 8th day of July, 2025.

Kymberly K. Evanson
United States District Judge

ORDER ON MOTIONS TO DISMISS - 24